IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN WALLACE and NORMA WALLACE, individually and on behalf of all others similarly situated, and on behalf of the general public, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>BCS INSURANCE COMPANY, WORLD ACCESS SERVICE CORPORATION, ACCESS AMERICA, and DOES 1-25, )<br><br>Defendants. ) | No. CV-F-07-778 OWW/SMS<br><br>MEMORANDUM DECISION DENYING IN PART AND GRANTING IN PART WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT (Doc. 87) |

Plaintiffs John Wallace and Norma Wallace are proceeding pursuant to an Amended Complaint filed in the Fresno County Superior Court and removed to this Court on May 25, 2007. Defendants are BCS Insurance Company, World Access Service Corporation, Access America and Does 1-25.  The Amended Complaint alleges the following claims:

1

(1) First Cause of Action for mail fraud and wire fraud in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO).  The First Cause of Action is alleged as a nationwide class action against all Defendants;

(2) Second Cause of Action for breach of contract alleged by John and Norma Wallace individually against BCS Insurance Company;

(3) Third Cause of Action for bad faith claims handling and denial alleged by John and Norma Wallace individually against BCS Insurance Company; and

(4) Fourth Cause of Action for unfair business practices in violation of California Business and Professions Code §§ 17200 *et seq*.  The Fourth Cause of Action is alleged against all Defendants as a class action for all California Insureds.

Defendants move to dismiss the First and Fourth Causes of Action on the ground that Plaintiffs do not have standing to bring either claim.  Alternatively, Defendants move to dismiss the First and Fourth Causes of Action pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted.

In moving to dismiss, Defendants concede that the "physician did not advise ground" for denying Plaintiffs' claim does not apply, asserting that that ground for denial of the claim (as well as those of putative class members) had been "inadvertently included" in communications.

A.   <u>ALLEGATIONS OF AMENDED COMPLAINT</u>.

The Amended Complaint is very lengthy and somewhat repetitive.

1    The Amended Complaint alleges in pertinent part that

2    "Defendants, through the use of travel agents, tour operators,

3    airlines and others, Defendants' interconnected web sites, and

4    other means, offer insurance coverage for Trip Cancellation or

5    Trip Interruption coverage for any serious injury or unforeseen

6    medical condition which is so disabling as to cause a reasonable

7    person to cancel or interrupt their trip" and that Defendants

8    "falsely represent to claimants, including Plaintiffs and members

9    of the class, that Trip Cancellation and Trip Interruption

10   coverage requires that a physician advise the Insured to cancel

11   or interrupt their trip".  (¶¶ 8-9).  The Amended Complaint

12   further alleges:

13           10.  To dissuade insureds, including
             Plaintiffs and members of the class, from
14           even filing claims for Trip Cancellation or
             Trip Interruption, Defendants post on their
15           interconnected web site a Claim Form and a
             Physician Statement Form that falsely
16           represent that Trip Cancellation and Trip
             Interruption coverage requires that a
17           physician advise the insured to cancel or
             interrupt their trip.
18
             11.  If insureds, including Plaintiffs and
19           members of the class, are not dissuaded from
             filing claims for Trip Cancellation or Trip
20           Interruption, Defendants' claims handling
             software is designed to generate a 'Reason'
21           for denying coverage based on the fact that a
             physician did not advise the insured to
22           cancel or interrupt their trip.

23           12.  If insureds, including Plaintiffs and
             members of the class, call Defendants by
24           telephone to protest the denial of their
             claims, Defendants' representatives are
25           trained by Defendants to falsely represent
             that the insurance certificate language
26           requires that a physician advise the insured

3

to cancel or interrupt their trip.

13.   And if insureds, including Plaintiffs
and members of the class, use the mails to
write to Defendants to protest denial of
their claims, Defendants' representatives are
trained by Defendants to mail letters to the
insureds that falsely represent that the
insurance certificate language requires that
a physician advise the insured to cancel or
interrupt their trip.

The relevant allegations in the Amended Complaint
specifically related to Defendants' acts with regard to
Plaintiffs are set forth in Paragraph 28(l) of the Class Action
Allegations and in the Second Cause of Action for breach of
contract against BCS Insurance Company.   Paragraph 28, which
pertains to the commonality requirement for a class action,
alleges in pertinent part:

28.   There is a well-defined commonality of
interest among the members of the proposed
class.   Plaintiffs, like all other members of
the class allege:

...

(l) by misrepresenting to the Plaintiffs and
members of the class, in the Claim Form, in
the Physician Statement Form, in
correspondence, and by telephone, that the
Trip Cancellation and Trip Interruption
coverage required a physician to advise the
claimant to cancel or interrupt their trip,
Defendant [sic] committed 'unfair,'
'unlawful,' and 'fraudulent' business
practices in violation of Business &
Professions Code section 17200 et seq.   By
way of example, when the WALLACES asked their
travel agent for assistance in resolving
their claim. [sic] On behalf of the WALLACES,
their travel agent called Defendants on the
telephone on March 15, 2006, to inquire
regarding the status of the WALLACES' claim.
During that telephone call, Maxine Daniely,

4

an agent of the Defendants, falsely
represented that the insurance coverage
issued to the WALLACES required that a
physician advise them to cancel or interrupt
their trip.  Plaintiffs are informed and
believe, and thereon allege, that such false
representations made by telephone are part of
Defendants' pattern and practice of claims
handling.  As another example, Defendants'
Regulatory Claims Compliance Manager, Keith
Redden-McAllister, sent a letter by U.S. Mail
to the WALLACES dated June 16, 2006.  In that
letter, Defendants affirmed the denial of
coverage for the WALLACES' claim, and again
falsely represented that the insurance
coverage issued to the WALLACES required that
a physician advise them to cancel or
interrupt their trip.  Plaintiffs are
informed and believe, and thereon allege,
that such false representations in letters
sent by U.S. Mail are part of Defendants'
pattern and practice of claims handling ....

The Second Cause of Action alleges in pertinent part:

73.  Plaintiffs ... planned a trip from
Fresno ... to Des Moines, Iowa, then on to
Macon, Georgia, with a return trip in reverse
order ('the Trip'.)  They planned to leave
Fresno on September 28, 2005, and arrive back
in Fresno on October 28, 2005.  This Trip was
more than 100 miles and was not to obtain
health care or treatment of any kind.

74. On ... August 29, 2005, Plaintiffs ...
purchased a policy of travel insurance called
'AAA TripAssist Cruises and Tours - Basic
Plan,' policy number 190429248, hereinafter
referred to as 'the Policy.'

...

84.  Under 'A.  TRIP CANCELLATION AND
INTERRUPTION PROTECTION,' the Policy stated:

A.  TRIP CANCELLATION AND
INTERRUPTION PROTECTION

*Trip cancellation coverage provides
benefits for loss(es) You incur for
Trips cancelled up to the time and*

5

*date of departure.  Trip interruption coverage provides benefits for loss(es) You incur for Trips that are interrupted or delayed after the time and date of departure.*

*For all the covered reasons outlined below, You must notify the appropriate travel suppliers of Your cancellation or interruption within 72 hours of the occurrence, unless the condition prevents it, then as soon as reasonably possible.  Otherwise the right to compensation will lapse.*

*A maximum benefit of up to the amount indicated in Your Letter of Confirmation is provided to cover certain expenses listed below which result from the cancellation or interruption of your Trip due to:*

*1.  Any serious Injury or any unforeseen serious medical condition:*

*a.  Occurring to You or a Traveling Companion, which is so disabling as to cause a reasonable person to delay, cancel, or interrupt their Trip;*

*b.  Occurring to a Family Member that is considered life threatening or requiring hospitalization; or*

*c.  Occurring to a Family Member requiring Your care.*

*For Trip Cancellation benefits, an actual examination by a licensed Physician must take place within 72 hours of the cancellation.  For Trip Interruption benefits, this examination must take place during your Trip.  This Physician must not be [a] member of Your or Your Traveling Companion's immediate family or Yourself, or an immediate*

*family member of the person whose
condition caused the cancellation
or interruption.*

...

87.  On ... October 14, 2005, while the
Policy was in full force and effect,
Plaintiffs ... boarded a scheduled flight to
go from Macon, Georgia, to Des Moines, Iowa,
that was part of their 'Trip' insured under
the Policy.  Plaintiff NORMA WALLACE fell in
an 'Accident' and sustained an 'Injury' to
her arm and wrist.  Plaintiffs ... boarded
the flight in the hope that they would not
have to 'Interrupt' their 'Trip'.  However,
they reasonably concluded they needed to
'Interrupt' their 'Trip' so that NORMA
WALLACE could seek medical attention, and
that she needed JOHN WALLACE's assistance to
do so.  Plaintiffs ... disembarked and rented
a car and drove to the Macon Medical Center,
where, on October 14, 2005, NORMA WALLACE was
examined, x-rayed, treated and received a
prescription for pain medication from a
licensed 'Physician', who was not in any way
related to Plaintiffs ....

88.  By the time the Physician's examination
and x-ray were completed, Plaintiff[s]' ...
flight had departed.  They therefore used the
rental car to drive from Macon ... to Des
Moines ... and from Des Moines, resumed their
scheduled 'Trip.'

89.  Plaintiffs ... submitted a timely claim,
provided an adequate proof of loss, and
complied with all conditions under the
Policy.

90.  Defendant BCS INSURANCE COMPANY breached
the terms of the Policy ... by, among other
things, refusing to honor their legitimate
claim for Policy benefits.

91.  Defendant denied coverage by letter ...
dated June 16, 2006.  Defendant's denial
letter contended the Policy's Trip
Interruption coverage requires that 'In order
to interrupt your trip for a medical reason,
a doctor has to advise you to do so.'  The

7

Policy contains no such requirement.
Defendant's statement in the denial letter
that the Policy contains such a requirement
is false.

92.  Defendant maintains a web site which
contains a Trip Cancellation Or Interruption
Claim Form (medical reasons).  This Claim
Form states:

> ____ A The following question is
> only if your illness/injury was the
> cause of the
> cancellation/interruption:
>
> Your insurance requires that a
> licensed physician complete an
> examination and advise you that you
> cancel or interrupt your trip.
>
> What date did your doctor advise
> cancellation/interruption?
>
> __/__/__
>
> ____ B If you canceled or
> interrupted your trip due to
> another person's illness or injury:
>
> What date did this person's doctor
> advise you to interrupt or cancel
> your trip? __/__/__
>
> Please provide the name, address,
> and phone number of the physician
>
> ...

93.  The Policy contains no requirement that
a Physician advise the insureds to cancel or
interrupt their Trip.  The representation in
the Claim Form that the Policy contains such
a requirement is false.

Other allegations of the Amended Complaint will be quoted or
described as necessary to address the specific issues raised by
Defendants' motion.  *See infra.*

A.   <u>GOVERNING STANDARDS</u>.

8

1    A motion to dismiss under Rule 12(b)(6) tests the
2    sufficiency of the complaint. *Novarro v. Black*, 250 F.3d 729,
3    732 (9th Cir.2001). Dismissal of a claim under Rule 12(b)(6) is
4    appropriate only where "it appears beyond doubt that the
5    plaintiff can prove no set of facts in support of his claim which
6    would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-
7    46 (1957). Dismissal is warranted under Rule 12(b)(6) where the
8    complaint lacks a cognizable legal theory or where the complaint
9    presents a cognizable legal theory yet fails to plead essential
10   facts under that theory. *Robertson v. Dean Witter Reynolds,*
11   *Inc.*, 749 F.2d 530, 534 (9th Cir.1984). In reviewing a motion to
12   dismiss under Rule 12(b)(6), the court must assume the truth of
13   all factual allegations and must construe all inferences from
14   them in the light most favorable to the nonmoving party.
15   *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002). However,
16   legal conclusions need not be taken as true merely because they
17   are cast in the form of factual allegations. *Ileto v. Glock,*
18   *Inc.*, 349 F.3d 1191, 1200 (9th Cir.2003). Immunities and other
19   affirmative defenses may be upheld on a motion to dismiss only
20   when they are established on the face of the complaint. *See*
21   *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999); *Jablon v.*
22   *Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) When ruling
23   on a motion to dismiss, the court may consider the facts alleged
24   in the complaint, documents attached to the complaint, documents
25   relied upon but not attached to the complaint when authenticity
26   is not contested, and matters of which the court takes judicial

1  notice.  *Parrino v. FHP, Inc*, 146 F.3d 699, 705-706 (9th

2  Cir.1988).

3      Two threshold issues involving these standards are

4  addressed.

5      1.  <u>SUBMISSION BY DEFENDANTS OF LETTER DENYING</u>

6  <u>PLAINTIFFS' CLAIM FOR BENEFITS</u>.

7      In Plaintiffs' opposition to the motion to dismiss,

8  Plaintiffs object to Defendants' assertion that their claim was

9  denied for "two separate reasons", thereby negating any reliance

10  on the "physician advise" requirement, and argue that Defendants

11  are improperly converting the motion to dismiss to a motion for

12  summary judgment.  Plaintiffs contend that Defendants allegedly

13  denied coverage and assert that the initial denial letter is

14  missing and that Defendants have been unable to locate it.

15      In their reply brief, Defendants refer to the standards

16  which allow a court to review a document referred to in the

17  pleading but not attached to the pleading in resolving a Rule

18  12(b)(6) motion.  Defendants refer to Paragraph 28(l) of the

19  Amended Complaint quoted above and the June 16, 2006 letter to

20  Plaintiffs from Defendants' Regulatory Claims Compliance Manager,

21  Keith Redden-McAllister.  A copy of the June 16, 2006 letter was

22  filed on May 11, 2007 in the state court proceedings prior to

23  removal of the action as an Exhibit to the Declaration of Ely

24  Chayet.  The June 16, 2006 letter states in pertinent part:

25          BCS Insurance Company (BCS) has forwarded
            your letter of June 12, 2006, to my attention
26          for review and response.  World Access

10

> Service Corp. (WASC) is the administrator of
> a travel protection program that includes
> insurance underwritten by BCS.  'Access
> America' is a division and service mark of
> WASC.
>
> ...
>
> The letter you sent with your claim form
> indicated that you choose to rent a car
> rather than use your airline tickets because
> you had hurt your wrist.  You indicated in
> your letter that '... *I felt I could not
> stand the confinement of an airplane for the
> return trip ...'.*
>
> Your contract of insurance you purchased
> provided trip interruption benefits for very
> specific reasons.  In order to interrupt your
> trip for a medical reason, a doctor has to
> advise you to do so.  I see no evidence in
> the claim file that this requirement was met.
> *Your contract was also very specific in
> precluding coverage for an insured making
> changes to personal plans*. [Emphasis added]

Although the Court can take judicial notice of the contents of this letter in ruling on the motion to dismiss, it cannot take judicial notice of the validity of the alleged second ground for denial of the claim, changes to personal plans, or the impact of the alleged second ground for denial in determining whether Plaintiffs have established causation or reliance for purposes of standing or statement of a claim under RICO.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689-690 (9th Cir.2001):

> A court may take judicial notice of 'matters
> of public record' without converting a motion
> to dismiss into a motion for summary judgment
> ... But a court may not take judicial notice
> of a fact that is 'subject to reasonable
> dispute.'  Fed.R.Civ.P. 201(b).  Thus, the
> district court had authority under Rule 201
> to take judicial notice of the *fact* of the
> extradition hearing, the *fact* that a Waiver

11

of Extradition was signed by Kerry Sanders,
and the *fact* that Kerry Sanders purportedly
waived his right to challenge his extradition
to New York as 'Robert Sanders.'  The court
may also have had the authority to do so
because plaintiff' First Amended Complaint
repeatedly refers to the extradition process
that Kerry Sanders underwent, and arguably
incorporates the fact of the extradition
hearing and the waiver by reference ....

But the court did more that take judicial
notice of *undisputed* matters of public
record.  The court took judicial notice of
*disputed* facts stated in public records ....

On a Rule 12(b)(6) motion to dismiss, when a
court takes judicial notice of another
court's opinion, it may do so 'not for the
truth of the facts recited therein, but for
the existence of the opinion, which is not
subject to reasonable dispute over its
authenticity.' ... Here, the district court
incorrectly took judicial notice of the
validity of Kerry Sanders' waiver, which was
as yet unproven.

Defendants also assert that a transcript of the March 15,
2006 telephone conversation alleged in Paragraph 28(1) was
submitted in state court proceedings.  However, judicial notice
cannot be taken of this transcript unless Plaintiffs do not
dispute its authenticity, accuracy, and underlying facts.
Plaintiffs have not conceded the authenticity or accuracy of that
transcript.  Therefore, the transcript is not considered in
resolving the motion to dismiss.

Plaintiffs argue in their opposition to the motion to
dismiss that they have no obligation to anticipate and plead
around other exclusions or policy defenses Defendants may raise.
Cal. Practice Guide: Fed. Civil Procedure Before Trial ¶

12

8:139 (Rutter 2007), states that a "[p]laintiff is generally not required to plead facts in the complaint to negate anticipated affirmative defenses" but that "the result is different where plaintiff pleads facts which show its claims are time barred or otherwise subject to an affirmative defense."

Defendants argue that Plaintiffs have been aware through discovery and other proceedings in state court before they filed the Amended Complaint that Defendants have consistently relied on the "change in personal plans exclusion" since their claim for benefits was denied:

> Plaintiffs cannot successfully 'plead around' the fact that Defendants have consistently asserted another legitimate ground for denying their claim.  As Plaintiffs do not challenge the merit of that ground for denial (they only argue - incorrectly - that Defendants cannot rely on it because it is 'outside' the pleadings), they essentially concede its validity.  Thus, Plaintiffs' RICO and Section 17200 claims must be dismissed because Plaintiffs have not alleged causation in their failure to allege any harm, *i.e.,* denial of their claim, resulting from the purportedly bad conduct.

The issues of reliance and causation are discussed in more detail *infra* and are a recurring theme throughout this motion and Plaintiffs' opposition.

2.   WAIVER OF MOTION TO STRIKE.

Because Defendants' motion to dismiss addresses only two of the four causes of action alleged in the Amended Complaint, Plaintiffs argue that Defendants should have filed a motion to strike the First and Fourth Causes of Action under Rule 12(f),

13

1  Federal Rules of Civil Procedure.  Plaintiffs further argue that,

2  because Defendants filed a Rule 12(b)(6) motion to dismiss which

3  did not include a motion to strike, Defendants have waived their

4  right to file a motion to strike.

5       Plaintiffs arguments are without merit.  Cal.Practice Guide:

6  Fed. Civil Procedure Before Trial ¶ 9:189 (Rutter 2007), states

7  that "[i]n a complaint alleging several distinct claims for

8  relief, a Rule 12(b)(6) motion may be directed to less than all

9  of the claims asserted."  A Rule 12(b)(6) motion challenges the

10 legal sufficiency of the pleading while a Rule 12(f) motion to

11 strike seeks to strike any insufficient defense or any redundant,

12 immaterial, impertinent, or scandalous matter, rather than to

13 test the legal sufficiency of the claim.  *Id.* at ¶¶ 9:197.5,

14 9:203.

15      C.  <u>PLAINTIFFS' LACK OF STANDING</u>.

16      Defendants move to dismiss the First and Fourth Causes of

17 Action on the ground that Plaintiffs lack standing to bring these

18 claims.

19      In *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018,

20 1022 (9th Cir.2003), the Ninth Circuit explained:

21           [O]ur law makes clear that 'if none of the
            named plaintiffs purporting to represent a
22           class establishes the requisite of a case or
            controversy with the defendants, none may
23           seek relief on behalf of himself or any other
            member of the class.'  *O'Shea v. Littleton*,
24           414 U.S. 488, 494 ... (1974).  As Herbert B.
            Newberg explains in his seminal work on class
25           actions, 'standing is the threshold issue in
            any suit.  If the individual plaintiff lacks
26           standing, the court need never reach the

                                    14

1  class action issue.' ....

2  "[T]o satisfy Article III's standing requirements, a plaintiff

3  must show (1) it has suffered an 'injury in fact' that is (a)

4  concrete and particularlized and (b) actual or imminent, not

5  conjectural or hypothetical; (2) the injury is fairly traceable

6  to the challenged action of the defendant; and (3) it is likely,

7  as opposed to merely speculative, that the injury will be

8  redressed by a favorable decision." *Friends of the Earth, Inc.*

9  *v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-

10 181 (2000), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

11 560-561 (1992).

12    Defendants argue that Plaintiffs lack standing to bring

13 either the First or Fourth Cause of Action because Plaintiffs

14 have not alleged, and cannot allege, that they suffered any

15 injury as a result of Defendants' alleged actions:

16          Plaintiffs premise their claims on the theory
           that the insureds were misled by certain
17          claim forms when, in fact, the Amended
           Complaint itself evidences that Plaintiffs
18          *themselves* were *not* misled by the forms and
           proceeded to file their claim.  Their claim
19          for benefits continues to be denied based on
           an exclusion *other* than the one that
20          Plaintiffs allege is common to the putative
           class.  Thus, Plaintiffs, and any other
21          insureds in their same shoes, lack standing
           to pursue this claim.

22          1.  <u>First Cause of Action</u>

23    With regard to the First Cause of Action for violation of

24 RICO, "[t]o state a civil RICO claim, plaintiffs must allege (1)

25 conduct (2) of an enterprise (3) through a pattern (4) of

26

15

racketeering activity (5) causing injury to plaintiffs' 'business or property.'  18 U.S.C. § 1964(c)."  *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001).

"[A] showing of 'injury' requires proof of concrete financial loss, and not mere 'injury to a valuable intangible property interest.'" *Oscar v. University Students Co-op Ass'n*, 965 F.2d 783, 785 (9th Cir.), *cert. denied*, 506 U.S. 1020 (1992).  Defendants cite *Expanding Energy, Inc. v. Koch Industries, Inc.,* 132 F.R.D. 180, 183 (S.D.Tex.1990), a case addressing class certification, for the proposition that "[t]he device of the class action cannot be permitted to relieve Plaintiffs of their burden of proving in this RICO action that the class was injured in its business or property."

Defendants contend that Plaintiffs are unable to meet these requirements on two fundamental levels.   First, Defendants argue, Plaintiffs allege the RICO claim on the basis of mail and wire fraud, even though the alleged fraud, inclusion of the "physician did not advise" language in the claim forms and assertion of that purported requirement as an "alternate ground" for denial of Plaintiffs' claim, was not relied on by Plaintiffs. Defendants contend:

> Despite the lack of reliance, Plaintiffs have creatively manufactured a speculative factual scenario in which Defendants are defrauding the public because certain forms (claim forms and physician statement forms that insureds are instructed to utilize on the Access America website) refer to the date that a physician advised an insured to cancel or interrupt their trip when the certificate

1    issued did not have such a provision.
     (Amended Complaint, ¶¶ 49-53.)  The 'fraud
2    scheme' that Plaintiffs have dreamed up, and
     upon which their claim is based, however, has
3    one fatal flaw: Plaintiffs themselves never
     relied upon the 'fraud' that they claim was
4    being perpetrated, nor is their any
     suggestion that anyone else did either.
5    Notably, missing from Plaintiff's RICO claim
     is any allegation that Plaintiffs themselves
6    were misled by the claim form or physician
     statement form that they complain about;
7    significantly, their Amended Complaint admits
     that they proceeded to file their claim
8    regardless of the inapplicable language of
     the claim form or physician statement form.
9    (Amended Complaint, ¶ 89).  Thus, the Amended
     Complaint itself evidences that the language
10   did not deter Plaintiffs from filing or
     pursuing their claim for benefits.  (Id.).
11   If Plaintiffs are 'typical' of the class that
     they wish to represent, then the putative
12   class members likewise proceeded to file
     claims irrespective of the language that
13   Plaintiffs decry in a vacuum as fraudulent.

14       Defendants cite *Poulos v. Caesars World, Inc.*, 379 F.3d 654,

15   664 (9th Cir.2004):

16       Causation lies at the heart of a civil RICO
         claim.  Lumping claims together in a class
17       action does not diminish or dilute this
         requirement.  It is well settled that, to
18       maintain a civil RICO claim predicated on
         mail fraud, a plaintiff must show that the
19       defendants' alleged misconduct proximately
         caused the injury ... In some cases, reliance
20       may be 'a milepost on the road to causation.'

21   In citing *Poulos*, Defendants recognize that the Ninth Circuit has

22   not definitively ruled that reliance is always necessary to prove

23   causation in a civil RICO, *see Poulos, id.* at 666:

24       Because it is neither necessary nor prudent
         to reach the issue of whether reliance is the
25       *only way* plaintiffs can establish causation
         in a civil RICO claim predicated on mail
26       fraud, we decline to do so.  Rather, we note

                                17

> that our holding is both narrow and case-specific, and that we have been careful to frame the controlling issue in terms of causation, not reliance.

Defendants note that the issue was certified to the Supreme Court in *Bank of China, New York Branch v. NBM L.L.C.,* 545 U.S. 1138 (2005). However, the case settled before the Supreme Court could rule on the issue. Nonetheless, Defendants contend, the weight of authority supports the conclusion that reliance is required in a civil RICO alleging mail or wire fraud. *See Bank of China, New York Branch v. NBM L.L.C.,* 359 F.3d 171, 176 (2nd Cir.2004); *Summit Props., Inc. v. Hoechst Celanese Corp.*, 214 F.3d 556, 562 (5th Cir.2000), *cert. denied*, 531 U.S. 1132 (2001); *Appletree Square I, Ltd. P'ship v. W.R. Grace & Co.*, 29 F.3d 1283, 1286 (8th Cir.1994); *Caviness v. Derand Res. Corp.*, 983 F.2d 1295, 1305 (4th Cir.1993); compare *Sys. Mgmt., Inc. v. Loiselle*, 303 F.3d 100, 103-104 (1st Cir.2002).

Defendants further argue that Plaintiffs lack standing to bring the civil RICO claim because the "purported conduct is not the cause of any particularized injury to themselves or members of the purported class." Defendants contend that because Plaintiffs cannot truthfully allege that the nonpayment of their claim was proximately caused by the reference to the inapplicable provision, Plaintiffs lack standing because they suffered no tangible, concrete injury to business or property directly resulting from the alleged RICO violation. In so arguing, Defendants rely on the letter denying Plaintiffs' claim for

benefits.  *See discussion supra.*  Defendants argue that the only class of persons on whose behalf Plaintiffs arguably allege the "missing reliance element" is a class of person who never filed a claim for benefits because they were deterred by the language on the claim form.  Defendants argue that these allegations are "purely speculative on behalf of an imaginary class of persons of which these Plaintiffs are not typical", that "[t]here is no reason to believe that ... such a class of persons exist, as Plaintiffs themselves were not deterred and thus lack standing to pursue these make-believe claims."  Defendants further contend:

> [A]s to the class of persons that did file claims and may have had the erroneous provision included as one of several reasons for denial of the claims, Plaintiffs have failed ... to allege that the class members' insurance claims would have been paid but for the inclusion of the inapplicable 'physician must advise' provision in the examination of the claim.  In failing to do so, Plaintiffs, and the putative class members, have judicially admitted that the requisite element of 'injury' is not derived from 'the conduct constituting the violation.'  Thus, Plaintiffs have judicially admitted that they do not have standing because they have not alleged any damages that are 'fairly traceable to the challenged action of the defendant', *i.e.,* damage caused by the inclusion of language (that a physician must advise the insured to interrupt their trip) in claim forms relating to a condition precedent not contained in their insurance certificates.  Plaintiffs - well aware that their claim and the claims of other insureds were concurrently denied because of exclusions or unsatisfied conditions precedent that *were* included in the insurance certificate issued to them - cannot cure this defect in their standing.

Plaintiffs respond that, because the Amended Complaint

1  alleges denial of their legitimate claim for Trip Interruption

2  benefits, a concrete, particularized and actual injury, nothing

3  more is required to demonstrate their standing.  Plaintiffs refer

4  to the numerous allegations in the Amended Complaint that

5  Defendants denied coverage for legitimate claims to Plaintiffs

6  and class members and wrongfully retained money owed to

7  Plaintiffs and class members under the insurance contracts,

8  referring to Paragraphs 2, 6,7, 90, 94, 100(f) & (h), 103, 110,

9  111, 112 of the Amended Complaint.  Plaintiffs contend that the

10  First Cause of Action for RICO alleges that Defendants' acts of

11  wire and mail fraud damaged Plaintiffs and the class members by

12  denying payment of benefits to which they are entitled for valid

13  claims, referring to Paragraph 47 of the Amended Complaint.

14  Plaintiffs argue that Paragraphs 54-57 allege that Defendants use

15  false statements in claim forms, physician statement forms,

16  letters and by telephone to dissuade insureds from filing claims

17  and to avoid legitimate claims and wrongfully retain benefits

18  belonging to Plaintiffs and class members and that these

19  misrepresentations in the claim forms were repeated to Plaintiffs

20  in letters sent to Plaintiffs as well as in telephone calls to

21  Plaintiffs or their travel agent.  Plaintiffs further refer to

22  the following allegations in the RICO cause of action:

23          60.  The numerous predicate acts of mail
            fraud and wire fraud described herein are
24          part of separate and fraudulent and
            extortionate schemes by Defendants designed
25          to defraud Plaintiffs and the class of money
            and property interests under false pretenses.
26          *Plaintiffs and the class as victims of these*

1
2

     *unlawful patterns of illegal activity have*
*and continue to suffer losses as a result of*
*these activities.*

3

     ...

4
5
6
7
8
9
10

     **66.   The Defendants either knew or recklessly**
**disregarded that the misrepresentations and**
**omissions described above were material.**
**Plaintiffs and the class necessarily relied**
**on the misrepresentations and omissions in**
*(a) failing to submit valid claims for Trip*
*Cancellation or Trip Interruption benefits;*
*or (b) accepting Defendants' denial of*
*coverage for their valid Trip Cancellation or*
*Trip Interruption claims; or (c) incurring*
*additional expense, fees and costs in trying*
*to recover the Trip Cancellation or Trip*
*Interruption benefits to which they were and*
*are entitled.*

11
12
13

     **67.   The Plaintiffs and the class members**
**have been injured in their property rights by**
**Defendants' overt acts and racketeering**
**activities.**

14  **Plaintiffs recognize that the Ninth Circuit has not definitively**

15  **ruled that reliance is an element of causation for civil RICO**

16  **alleging wire or mail fraud.[1]  In *Living Designs, Inc. v. E.I.***

17  ***DuPont de Nemours*, 431 F.3d 353, 363 (9th Cir.2005), *cert.***

18  ***denied*, ___ U.S. ___, 126 S.Ct. 2861 (2006):**

19

20       [1]**Plaintiffs also cite *Schmuck v. United States*, 489 U.S. 705,**
**710-711 (1989):**

21
22
23
24

     **To be part of the execution of the fraud ...,**
**the use of the mails need not be an essential**
**element of the scheme ... It is sufficient for**
**the mailing to be 'incident to an essential**
**part of the scheme,' ... or 'a step in [the]**
**plot,' ....**

25  **The Supreme Court made this statement in the context of discussing**
26  **the mailing element of a mail fraud scheme.  The Supreme Court was**
**not discussing the issue of proximate cause or reliance.**

1           The district court concluded, without
analysis, that Plaintiffs were required to
2        prove that they reasonably relied on DuPont's
fraudulent misrepresentations to state a
3        meritorious civil RICO case predicated on
mail and wire fraud ... Under 18 U.S.C. §
4        1964(c), civil RICO plaintiffs must
demonstrate causation, specifically that they
5        were injured 'by reason of' the alleged
racketeering activity of the defendant ...
6        'It is well settled that, to maintain a civil
RICO claim predicated on mail [or wire]
7        fraud, a plaintiff must show that the
defendants' alleged misconduct proximately
8        caused the injury.' *Poulos v. Caesars World,
Inc.*, 379 F.3d 654, 664 (9th Cir.2004) ...
9        Although, in some cases, 'reliance may be a
milepost of the road to causation,' *id.*,
10      (quoting *Blackie v. Barrack*, 524 F.2d 891,
906 n.22 (9th Cir.1975)), we have in the past
11      declined to announce a black-letter rule that
reliance is the only way plaintiffs can
12      establish causation in a civil RICO claim
predicated on mail or wire fraud. *Id.* at
13      666. We need not address whether this is a
case where Plaintiffs can establish causation
14      only by demonstrating that they reasonably
relied on DuPont's fraud, because Plaintiffs
15      adequately pleaded reasonable reliance in
their amended complaint. Plaintiffs alleged
16      in their complaint that they 'reasonably
relied on [DuPont] to obey statutes, court
17      orders, court rules, rules of evidence,
written agreements, representations to the
18      court by officers of the court, and
representations made under oath to the court
19      by [DuPont]'s officers and agents.' ...
Regardless of whether Plaintiffs were
20      required to plead reasonable reliance to
satisfy the causation element of their RICO
21      claims, they did, and thus the district court
erred in granting judgment on the pleadings
22      on this issue.

23    Defendants reply that none of the theories of reliance

24 alleged in the Amended Complaint apply to Plaintiffs:

25        First, Plaintiffs did not fail to submit a
claim; their whole case is based on the
26      denial of a claim they submitted. Second,

they never accepted Defendants' denial of
coverage.  Third ... Plaintiffs have not
alleged that they would not have had to
secure an attorney 'to recover' their
benefits but for the assertion of the
incorrect provision; Plaintiffs cannot make
such an allegation because there was more
than one ground for denying their claim.
Moreover, it is illogical to argue that the
incursion [sic] of attorneys' fees to file
suit confers standing.  If that were true, a
plaintiff would gain standing simply by
hiring a lawyer to file a complaint.

Again acknowledging that the law on reliance in civil RICO

claims based on mail or wire fraud is unsettled because of the

conflict in the Circuits, Defendants argue that Plaintiffs

"utterly fail to set forth any alternative scenario under which

they could allege causation."  Defendants argue that Plaintiffs'

allegations "lack causation because Plaintiffs have not alleged –

and cannot allege – that the assertion of the incorrect provision

caused a harm."

Regulatory Claims Compliance Manager, Keith Redden-

McAllister's June 16, 2006 letter states in pertinent part:

The letter you sent with your claim form
indicated that you choose to rent a car
rather than use your airline tickets because
you had hurt your wrist.  You indicated in
your letter that '... *I felt I could not
stand the confinement of an airplane for the
return trip ...*'.

Your contract of insurance you purchased
provided trip interruption benefits for very
specific reasons.  In order to interrupt your
trip for a medical reason, a doctor has to
advise you to do so.  I see no evidence in
the claim file that this requirement was met.
Your contract was also very specific in
precluding coverage for an insured making
changes to personal plans.

23

1  The Certificate of Insurance issued to Plaintiffs, a copy of

2  which is attached as an exhibit to the Declaration of Ely Chayet

3  filed in the state court proceedings prior to removal, provides

4  in pertinent part:

5           Trip Cancellation/Interruption benefits do
             not cover loss(es) due to:
6
             ...
7
             2.  You or a Traveling Companion: a) making
8            changes to personal plans ....

9       This is a close question.  Defendants arguments raise

10 serious concerns about Plaintiffs' standing to allege the RICO

11 claim in the Complaint.  Because Plaintiffs undisputedly filed a

12 claim for insurance proceeds, they cannot establish that

13 Defendants' alleged fraud dissuaded them from filing a claim as

14 alleged in Paragraph 10 of the Amended Complaint.  Although

15 Plaintiffs contend that their claim for trip interruption

16 insurance was "legitimate", the Complaint does not acknowledge

17 that the claim was denied for two reasons, only one of which

18 involved the invalid "physician advise" requirement.  The weight

19 of authority requires reliance in a civil RICO alleging mail or

20 wire fraud.  Further, even if reliance is not required to be

21 pleaded, Plaintiffs' must still allege that Defendants' mail and

22 wire fraud proximately caused their injury.  The Complaint so

23 alleges.  Although Defendants argue that Plaintiffs cannot

24 establish proximate cause or reliance sufficient to establish

25 their standing because of the second ground for denial of the

26 claim, this is an issue of fact that cannot be resolved on a

24

motion to dismiss.

Defendants' motion to dismiss the First Cause of Action for lack of standing is DENIED WITHOUT PREJUDICE.

### 2. Fourth Cause of Action.

Defendants also assert that Plaintiffs lack standing to bring the Fourth Cause of Action.

Proposition 64, an initiative measure approved at the November 2004 general election, imposed new restrictions on private enforcement under California's Unfair Competition Law. California Business & Professions Code § 17204 provides that "[a]ctions for relief pursuant to this chapter shall be prosecuted ... by any person who has suffered injury in fact and has lost money or property as a result of such unfair competition."   California Business & Professions Code § 17203 provides in pertinent part:

> Any person may pursue representative claims
> or relief on behalf of others only if the
> claimant meets the standing requirements of
> Section 17204 and complies with Section 382
> of the Code of Civil Procedure.

California Code of Civil Procedure § 382 provides in pertinent part:

> [W]hen the question is one of a common or
> general interest, of many persons, or when
> the parties are numerous, and it is
> impracticable to bring them all before the
> court, one or more may sue ... for the
> benefit of all.

Defendants equate this standing requirement as "consistent with Article III" and contend that Plaintiffs have not and cannot

establish that they suffered an injury in fact and a loss of money or property as a result of the alleged unfair business practices of Defendant.  As with the RICO claim, Defendants argue that Plaintiffs neither relied on any representation or suffered any actual injury as a result of that reliance.  *See discussion supra*.  Further, Defendants contend, there were other, valid reasons for the denial to Plaintiffs of benefits under the Policy and, therefore, Plaintiffs cannot allege that the nonpayment of benefits was the "result of" the alleged unfair business practices.  Plaintiffs have not and cannot allege that their claim would have been paid "but for" the alleged unfair business practices because their claim would not have been paid regardless of the assertion of the erroneous provision.

Plaintiffs contend that the issue of whether California Business & Professions Code § 17200 requires reliance or causation is pending before the California Supreme Court in *In re Tobacco II Cases*, No. S147345, and *Pfizer, Inc. v. Superior Court (Galfano)*, No. S145775.  These cases have been pending since October 2006 and, as of the date of issuance of this Memorandum Decision, have not been resolved.  Further, Plaintiffs contend, Paragraphs 66 and 67 adequately allege both causation and reliance for purposes of the California Business and Professions Code.

Because whether causation and reliance are elements of a claim under California's unfair business practices statute is pending before the California Supreme Court, the motion to

26

dismiss on the ground that Plaintiffs lack standing to bring the Fourth Cause of Action is DENIED WITHOUT PREJUDICE. A federal court must apply California law to a supplemental cause of action and in this instance needs a definitive ruling from the Supreme Court.

D.  **FAILURE TO ADEQUATELY PLEAD CIVIL RICO**.

Defendants alternatively move to dismiss the First Cause of Action on the ground that the Amended Complaint does not adequately plead the elements of a civil RICO claim.

To reiterate, "[t]o state a civil RICO claim, plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' 'business or property.' 18 U.S.C. § 1964(c)." *Ove v. Gwinn*, *supra,* 264 F.3d at 825.

1.  **RICO ENTERPRISE**.

An "enterprise" is defined as including "any individual, partnership, corporation, association, or other legal entity, and any ... group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

The RICO enterprise is alleged in the Amended Complaint in pertinent part as follows:

> 38.  Plaintiffs and the class members are 'persons' within the meaning of 18 U.S.C. § 1864(c) [sic].

> 39.  At all times relevant hereto, Plaintiffs and the class, and the Defendants were and are 'persons' within the meaning of 18 U.S.C. § 1961(3).

27

40.  The following persons constitute an Enterprise, which Plaintiffs collectively refer to as the 'Internet Trip Insurance Enterprise': (1) Defendant BCS INSURANCE COMPANY; (2) Defendant WORLD ACCESS SERVICE CORPORATION; (3) Defendant ACCESS AMERICA; (4) over 22,000 travel agents not named as defendants herein; (5) at least fifteen (15) airlines, not named as defendants herein; (6) at least twenty-five (25) cruise lines, not named as defendants herein; and (7) at least three hundred (300) tour operators, not named as defendants herein.

41.  The Enterprise is an ongoing organization, which engages in, and whose activities affect, interstate commerce.

42.  While each named Defendant participates in the Enterprise, and are a part of it, the Defendants also have an existence separate and distinct from the Enterprise.

43.  Defendants maintain an interest in and control of the Enterprise and also conduct or participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity.

44.  Defendants control and participate [sic] in the Enterprise is necessary for the successful operation of Defendants' scheme.

45.  The Defendant's [sic] collectively are members of the Enterprise.

46.  The Enterprise has a discernable structure separate and apart from the pattern of racketeering activity in which the Defendants engage.

47.  In order to successfully deny coverage for legitimate claims for Trip Cancellation and Trip Interruption benefits and retain those funds owed to Plaintiffs and the class members as set forth in this Complaint, Defendants had to have a system which allows Defendants to channel claims inquiries to a common source and through that common source, provide false and misleading information to Plaintiffs and members of the class.  The

28

1      Enterprise provided Defendants with that
       ability.  The Enterprise also gives
2      Defendants the ability to conceal their
       scheme.
3
       48.  The Defendants and unnamed participants
4      in the Enterprise maintain an interrelated
       series of internet web sites that ultimately
5      lead insureds such as Plaintiffs and members
       of the class to the AccessAmerica web site.
6      By way of example, the WORLD ACCESS SERVICE
       CORPORATION web site, www.worldaccess.com
7      contains links to the ACCESS AMERICA web
       site.  The ACCESS AMERICA web site,
8      www.accessamerica.com contains a 'Product
       Overview' page which displays twenty (20)
9      different Travel Insurance products or
       programs available to the public, including
10     Plaintiff's [sic] and the class members, in
       all 50 states, plus the District of Columbia.
11     Using the ACCESS AMERICA web site, members of
       the public, including Plaintiffs and the
12     class members, may view the applicable
       insurance certificate available in their
13     state for each Travel Insurance product or
       program.  Although not every Travel Insurance
14     product or program is offered in every state,
       the ACCESS AMERICA web site contains over
15     1,000 .pdf images of insurance certificates
       available for purchase by the public,
16     including Plaintiffs and members of the
       class.  Of the more than 1,000 images, not
17     one contains an image of an Insurance
       Certificate that includes any policy
18     provision, exclusion, condition or other
       language limited [sic] coverage for Trip
19     Cancellation or Trip Interruption benefits to
       cases in which a physician has advised the
20     insured to cancel or interrupt their trip.

21     Defendants cite *Comwest, Inc. v. Am. Operator Serv., Inc.*,

22 *765 F.Supp. 1467, 1475 (C.D.Cal.1991):*

23     'In order to avoid dismissal for failure to
       state a claim, a [RICO] plaintiff must plead
24     specific facts, not mere conclusory
       allegations, which establish the existence of
25     an enterprise.'  *Elliott v. Foufas*, 867 F.2d
       877, 881 (5th Cir.1989).
26

                                29

Defendants also cite *United States v. Turkette*, 452 U.S. 576, 583 (1981), a case involving a criminal RICO conviction, in which the Supreme Court held:

> The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct [and] is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.

Relying on this authority, Defendants argue that the allegations of the Amended Complaint are defective for two reasons.  First, Defendants contend, other that a "brief mention in Paragraph 40", Plaintiffs do not allege that there were members of the enterprise besides Defendants and do not allege what role, if any, the members played in the enterprise.  In addition, Plaintiffs fail to properly allege the description of the enterprise's purpose in Paragraph 48.  Defendants contend that the example alleged in Paragraph 48 "is of no assistance":

> The interlinking of World Access and Access America's websites is a red-herring because, as stated by Plaintiffs [in Paragraph 19 of the Amended Complaint], Access America is a 'division' and 'service mark' of World Access ... Hence, they are the same entity.

Defendants further contend that an enterprise for purpose of 18 U.S.C. § 1962(c) cannot be the same entity as the RICO persons.

18 U.S.C. § 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such

30

enterprise's affairs through a pattern of racketeering activity.

*See Schreiber Distributing v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1396 (9th Cir.1986): "The courts have consistently held that in an action under section 1962(c) the 'person' must be a separate and distinct entity from the 'enterprise.'"

Defendants contend that, "excluding the four categories of organizations not named as defendants, which are only mentioned once and who's [sic] existence is not supported by any facts, the entire alleged enterprise is comprised only of Defendants." Because all of the entities involved are both RICO "persons" and RICO "enterprises", Defendants contend the Amended Complaint is "fatally and incurably defective" because Defendants cannot be employed or associated with Defendants.

The Amended Complaint is based on Section 1962(a) as well as Section 1962(c). "[W]e hold that where a corporation engages in racketeering activities and is the direct or indirect beneficiary of the pattern of racketeering activity, it can be both the 'person' and the 'enterprise' under section 1962(a). *Schreiber Distributing, supra*, 806 F.2d at 1398.

With regard to the allegations of "enterprise" for purposes of Section 1962(c), Plaintiffs cite *Brownell v. State Farm Mut. Ins. Co.*, 757 F.Supp. 526, 539 (E.D.Pa.1991):

> For purposes of § 1962(c), the RICO defendant and the RICO enterprise must be distinct and separate ... The combination of a corporation and its employees does not constitute an enterprise ....

> In the present case, plaintiff alleges that 'State Farm and Worldwide, individually and in association with each other, constitute enterprises as defined by 18 U.S.C. Section 1961(4).'  That is, plaintiff alleges three enterprises (1) State Farm, (2) Worldwide, and (3) the association of State Farm and Worldwide.  Clearly, State Farm and Worldwide are not enterprises within the ambit of § 1962(c).  While plaintiff could have been more precise in her description, she has alleged an association in fact of the two sufficient to withstand a motion to dismiss.

Plaintiffs also cite *State Farm Mut. Auto. Ins. Co. v. Rosenfield*, 683 F.Supp. 106, 109 (E.D.Pa.1988):

> The David M. Rosenfield law firm, having been a professional corporation organized to practice law, constitutes an 'enterprise' for RICO purposes ... Raskin was associated with the enterprise.

Defendants further argue that Plaintiffs have failed to allege that the enterprise is separate and apart from the alleged racketeering activity.  Defendants rely on *Wagh v. Metris Direct, Inc.,* 363 F.3d 821, 830-831 (9th Cir.2003), and *Chang v. Chen*, 80 F.3d 1293, 1299 (9th Cir.1996).

In *Odom v. Microsoft Corporation*, 486 F.3d 541 (9th Cir.2007), the Ninth Circuit held:

> We take this opportunity to join the circuits that hold that an associated-in-fact enterprise under RICO does not require any particular organizational structure, separate or otherwise ... To the extent that our past precedent suggests the contrary, it is hereby overruled.  *See, e.g. Wagh v. Metris Direct, Inc.* 348 F.3d 1102, 1112 [republished as amended at 363 F.3d 821 (9th Cir.2003)]; *Simon v. Value Behavioral Health, Inc.* 208 F.3d 1073, 1083-84 (9th Cir.2000); *Chang*, 80 F.3d at 1298-1299, 1301.

32

1  Because *Odom* has overruled *Wagh* and *Chang,* this ground for

2  dismissal of the First Cause of Action is without merit.

3      Defendants' motion to dismiss on the ground that the

4  "enterprise" is not adequately pleaded is DENIED.

5          2.   <u>FAILURE TO PROPERLY PLEAD CLAIM UNDER 18 U.S.C. §</u>

6  <u>1962(a)</u>.

7      18 U.S.C. § 1962(a) provides in pertinent part:

8          It shall be unlawful for any person who has
        received any income, directly or indirectly,

9          from a pattern of racketeering activity ...
        to use or invest, directly or indirectly, any

10          part of such income, or the proceeds of such
        income, in acquisition of any interest in, or

11          the establishment or operation of, any
        enterprise which is engaged in, or the

12          activities of which affect, interstate ...
        commerce.

13

14      Defendants move to dismiss the Amended Complaint to the

15  extent it alleges a violation of Section 1962(a) because it does

16  not allege facts establishing "that such 'use' or 'investment'

17  directly and proximately caused injury to Plaintiffs."

18  Defendants primarily rely on *Sebastian Intern., Inc. v.*

19  *Russolillo*, 186 F.Supp.2d 1055, 1068 (C.D.Cal.2000):

20          In order to state a claim under Section
        1962(a), a plaintiff must show injury

21          resulting from defendant's investment or
        improper use of racketeering income. *See*

22          *Simon v. Value Behavioral Health, Inc.*, 208
        F.3d 1073, 1083 (9th Cir.2000).  Furthermore,

23          a plaintiff must allege facts, not general
        conclusory statements, showing it was injured

24          by the investment of racketeering income.
        *See Nugget Hydroelectric L.P. v. Pacific Gas*

25          *and Electric Co.*, 981 F.2d 429, 437 (9th
        Cir.1992), *cert. denied*, 508 U.S. 908 ...

26          (1993).  Sebastian's conclusory allegation
        that it suffered injury from CAD's 'ill-

1   gotten' ... income is inadequate to state a
    claim under Section 1962(a) against
2   Defendants, therefore this claim is dismissed
    with leave to amend.
3
        Defendants argue that the Amended Complaint does not
4
specifically support a claim under Section 1962(a):
5
            Plaintiffs, in conclusory fashion, state that
6           Defendants 'seek to aid and abet and are
            aiding and abetting a scheme to violate 18
7           U.S.C. § 1962(a) and (c).'  (Amended
            Complaint, ¶ 58).  Directly contrary to the
8           aforementioned requirements, Plaintiffs
            allege that the purported racketeering acts
9           were conducted so that 'Defendants may
            wrongfully retain policy benefits and funds
10          rightfully belonging to Plaintiffs ....'
            (Amended Complaint, ¶ 54.)  Nowhere in the
11          Amended Complaint do Plaintiffs explain or
            allege what 'income' Defendants have received
12          by virtue of the alleged conduct, nor does
            the Amended Complaint articulate the manner
13          by which the income was 'used' in the conduct
            of the enterprise, as required by case law.
14
            As Plaintiffs have failed to allege that
15          Defendants used racketeering income to
            operate or acquire interests in the
16          enterprise (itself or the racketeering
            activities), this claim for relief should be
17          dismissed as a matter of law.

18      Plaintiffs respond that their general allegations of injury

19  from Defendants' "use" of the moneys belonging to Plaintiffs and

20  the class members in violation of Section 1962(a) suffice to

21  withstand a motion to dismiss.  Plaintiffs rely primarily on

22  *National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249

23  (1994).

24      *Scheidler* addressed whether RICO requires proof that either

25  the racketeering enterprise or the predicate acts of racketeering

26  were motivated by an economic purpose for purposes of Section

1962(c).   510 U.S. at 252.   Before analyzing the merits of this

issue, the Supreme Court discussed whether the petitioners had

standing to bring their claim because the complaint did not

allege an injury fairly traceable to the respondents' allegedly

unlawful conduct.   *Id.* at 255.   In holding the petitioners had

standing, the Supreme Court ruled in pertinent part:

> We have held that '[a]t the pleading stage,
> general factual allegations of injury
> resulting from the defendant's conduct may
> suffice, for on a motion to dismiss we
> presume that general allegations embrace
> those specific facts that are necessary to
> support the claim.'   *Lujan v. Defenders of
> Wildlife*, 504 U.S. 555, 561 (1992) ... The
> District Court dismissed petitioners' claim
> at the pleading stage pursuant to Federal
> Rule of Civil Procedure 12(b)(6), so their
> complaint must be sustained if relief could
> be granted 'under any set of facts that could
> be proved consistent with the allegations.'
> *Hishon v. King & Spaulding*, 467 U.S. 69, 73
> (1984).   DWHO and SWHO alleged in their
> complaint that respondents conspired to use
> force to induce clinic staff and patients to
> stop working and obtain medical services
> elsewhere ... Petitioners claimed that this
> conspiracy 'has injured the business and/or
> property interests of the [petitioners].' ...
> In addition, petitioners claimed that
> respondent Scheidler threatened DWHO's clinic
> administrator with reprisals if she refused
> to quit her job at the clinic ... Paragraphs
> 106 and 110 of petitioners' complaint
> incorporate these allegations into the §
> 1962(c) claim ... Nothing more is needed to
> confer standing on DWHO and SWHO at the
> pleading stage.

*Id.* at 256.

    No use or investment of racketeering income is alleged.

Dismissal of the First Cause of Action for violation of 18 U.S.C.

§ 1962(a) is GRANTED WITH LEAVE TO AMEND.

35

3.   **FAILURE TO PROPERLY PLEAD CLAIM UNDER 18 U.S.C. §**
**1962(c)**.

"To be liable under 18 U.S.C. § 1962(c), a defendant must
(1) participate (2) in the affairs of an 'enterprise' (3) through
a 'pattern' of (4) 'racketeering activity.'" *Allington v.*
*Carpenter*, 619 F.Supp. 474, 476 (C.D.Cal.1985).

Defendants argue that the Amended Complaint fails to state a
claim for violation of Section 1962(c) because it contains no
allegations that any of the Defendants participated in the
affairs of an enterprise.  Defendants cite *Reves v. Ernst &*
*Young*, 507 U.S. 170, 185 (1970).  *Reves* involved review of a
summary judgment.  In pertinent part, the Supreme Court held that
"'to conduct or participate, directly or indirectly, in the
conduct of such enterprise's affairs,' § 1962(c), one must
participate in the operation or management of the enterprise
itself." 507 U.S. at 185.

Plaintiffs cite *Virden v. Graphics One,* 623 F.Supp. 1417,
1433 (C.D.Cal.1985):

> This court agrees that the 'employed by or
> associated with' requirement of section
> 1962(c) should be broadly interpreted and
> should include outsiders associated with the
> enterprise as well as enterprise members.
> Such an interpretation comports with both the
> common definition of 'associate' ... and the
> *Sedima* Court's admonition ... that RICO
> should be construed broadly to effectuate
> Congress' intent ....

Under this standard, Plaintiffs contend, the Amended Complaint
adequately alleges that Defendants "participated" in the alleged

36

1  enterprise.   Plaintiffs refer to Paragraph 2 of the Amended

2  Complaint:

> This action is brought by Plaintiff and the
> class in connection with a scheme devised,
> conducted and/or participated in by
> Defendants BCS INSURANCE COMPANY, WORLD
> ACCESS SERVICE CORPORATION and ACCESS
> AMERICA, each of whom was employed by or
> associated with Defendant BCS INSURANCE
> COMPANY to misrepresent the nature and scope
> of Trip Cancellation and Trip Interpretation
> coverage provided by the insurance policies,
> and to retain monies rightfully belonging to
> Plaintiffs and members of the class for
> Defendants' own profit.

10  Plaintiffs refer to Paragraphs 6 and 7 that "Defendants have

11  taken and retained funds which have been rightfully earned by

12  Plaintiffs and class members and divert them to their own

13  profits" and that Defendants have undertaken a common scheme to

14  systematically deny, delay and diminish benefits owed under

15  insurance policies issued to Plaintiffs and members of the

16  class".   Plaintiffs further refer to Paragraphs 8-13, which

17  allege that Defendants, through travel agents, tour operators,

18  airlines and Defendants' interconnected websites, offer the

19  insurance and falsely represent to claimants that the insurance

20  requires that a physician advise the insureds to cancel or

21  interrupt their trips; that, to dissuade the filing of claims,

22  Defendants post on their interconnected website, a claim form and

23  physician statement form that falsely represent this requirement;

24  that, if claimants are not dissuaded by these forms from filing

25  claims, Defendants' claims handling software generates a "reason"

26  for denying coverage based on the absence of physician advice to

37

cancel or interrupt; and that if claimants call or use the mail to protest denial of claims, Defendants falsely represent the physician advice requirement.  Plaintiffs refer to Paragraph 22, which alleges that all defendants, including Doe defendants, were the agent and/or employer of the other defendants.  Plaintiffs refer to Paragraphs 42, 43, and 47 concerning the enterprise quoted above.  Finally, Plaintiffs refer to the allegations in Paragraphs 49-71 pertaining to the predicate acts as demonstrating the participation of the Defendants in the enterprise.

Defendants' motion to dismiss on this ground is DENIED.

## 4.   FAILURE TO SUFFICIENTLY ALLEGE A RICO INJURY.

Defendants repeat the same arguments made above in connection with causation as well as those made in connection with Section 1962(a) and (c).  For the reasons discussed above, Defendants' motion to dismiss on this ground is DENIED.

## 5.   FAILURE TO PLEAD ELEMENTS OF MAIL AND WIRE FRAUD WITH PARTICULARITY.

Defendants move to dismiss the First Cause of Action on the ground that the predicate acts of mail and wire fraud are not pleaded with the particularity required by Rule 9(b), Federal Rules of Civil Procedure.

The predicate acts of mail and wire fraud are alleged in Paragraphs 49-71 of the Amended Complaint:

> 49.  Defendants have used the Enterprise to direct Plaintiffs, the members of the class, and other insureds, to the ACCESS AMERICA web

site to file a claim electronically.  Other
than claims under the 'Vacation Protector'
program [which, ironically, is; [sic] not
depicted on or available for purchase through
the ACCESS AMERICA web site], the ACCESS
AMERICA web site www.accessamerica.com
contains only one claim form for use by
Plaintiffs, the class members, and other
insureds to use in making a claim for Trip
Cancellation or Trip Interruption benefits
when their Trip [sic] was cancelled or
interrupted due to illness or injury, the
'Trip Cancellation or Interruption Claim Form
(medical reasons).'  Until Plaintiffs filed
the initial Complaint in this action, this
'Trip Cancellation or Interruption Claim Form
(medical reasons)' stated:

> _____ *A The following question is
> only if your illness/injury was the
> cause of the
> cancellation/interruption:*
>
> *Your insurance requires that a
> licensed physician complete an
> examination and advise you that you
> cancel or interrupt your trip.*
>
> *What date did your doctor advise
> cancellation/interruption?*
>
> *__/__/__*
>
> _____ *B If you canceled or
> interrupted your trip due to
> another person's illness or injury:*
>
> *What date did this person's doctor
> advise you to interrupt or cancel
> your trip? __/__/__*
>
> *Please provide the name, address,
> and phone number of the physician*
>
> *...*

50.  After the original Complaint in this
action was filed, Defendants have modified
the Trip Cancellation or Interruption Claim
Form (medical reasons).' [sic] However, it
still falsely suggests that a doctor must

advise the insured to cancel or interrupt
their trip:

> A.   The following question in only
> if your illness/injury was the
> cause of the
> cancellation/interruption:
>
> Your insurance requires that a
> licensed physician complete an
> examination.
>
> What date did your doctor advise
> cancellation/interruption:
>
> __/__/__.
>
> B.   If you cancelled or interrupted
> your trip due to another person's
> illness or injury:
>
> What date did this person's doctor
> advise you to interrupt or cancel
> your trip? __/__/__
>
> Please provide the name, address,
> and phone number of the physician.
>
> ...

51.   Moreover, this 'Trip Cancellation or
Interruption Claim Form (medical reasons)'
instructs Plaintiffs, members of the class,
and other insureds that, 'It is essential
that the physician of the ill party complete
the enclosed Physician Statement Form and
that you return it with this claim form.'  It
further states, 'Check the information your
are attaching to this for [¶ ___ Completed
Physician Statement Form ...'

52.   The ACCESS AMERICA web site
www.accessamerica.com contains only two
Physician Statement Forms, but they are
identical.  This Physician Statement Form for
use by Plaintiffs, the class members, and
other insureds in making a claim for Trip
Cancellation or Trip Interruption benefits
when their Trip [sic] is cancelled or
interrupted due to illness or injury states
in pertinent part:

40

*This form is to be completed by the physician who advised you or your family member to cancel or interrupt your trip.  To ensure a prompt response, please make sure every question is answered on this form.*

\*\*\*

*Physician Information*

*Physician who advised cancellation/interruption: \_\_\_\_*

\*\*\*

*Patient's Diagnosis*

*Please indicate the primary diagnosis for which you advised cancellation/interruption of your patient's travel plans:*

_____

\*\*\*

*Did you advise cancellation/interruption of the trip? \_\_\_ YES \_\_\_ NO.*

\*\*\*

*Did you perform an actual examination when you gave this advice? \_\_\_YES \_\_\_NO.*

\*\*\*

*Date you advised cancellation \_\_/\_\_/\_\_.*

*By my signature and stamp below, I hereby certify that the above is true and correct and that I performed an examination of the patient at the time I recommended cancellation/interruption of his/her travel plans.*

41

...

53.  Despite the statements in the Trip
Cancellation or Interruption Claim Form
(Medical Reasons) and in the Physician
Statement Form representing to Plaintiffs,
the class members, and other insureds that
the insurance coverage for Trip Cancellation
or Trip Interruption required that a
physician advise the insured to cancel or
interrupt their trip, the Insurance
Certificate issued to Plaintiffs contained no
such requirement.  Further, not one of the
over 1,000 .pdf images of Insurance
Certificates on the ACCESS AMERICA web site
contains any requirement that a Physician
advise the insureds to cancel or interrupt
their Trip [sic].  The representation in the
Claim Form that any such Insurance
Certificate contains such a requirement is
false, fraudulent, and misleading.

54.  Defendants, through use of and
participation in the Enterprise, have sought
to direct Plaintiffs, class members, and
other insureds, to the ACCESS AMERICA web
site to file claims for Trip Cancellation or
Trip Interruption benefits.  Defendants,
through use of and participation in the
Enterprise, the misrepresentations including
the Trip Cancellation or Interruption Claim
Form (Medical Reasons) and in the Physician
Statement Form, provide insureds with false
information regarding the scope of Trip
Cancellation and Trip Interruption benefits,
and falsely informed them that they must have
been advised by a physician to cancel or
interrupt their trip in order to be entitled
to Trip Cancellation or Trip Interruption
benefits.  In this manner, Defendants,
through use of and participation in the
Enterprise, seek to dissuade insureds from
ever filing claims for Trip Cancellation or
Trip Interruption benefits in order to avoid
legitimate claims from being made so that
Defendants may wrongfully retain policy
benefits and funds rightfully belonging to
Plaintiffs, class members and other insureds.

55.  Further, if unsuccessful in dissuading
insureds from even filing claims for Trip

42

Cancellation or Trip Interruption benefits, Defendants, through use of and participation in the Enterprise, have developed claims handling software which includes 'Physician Did Not Advise' as a reason to deny coverage for Trip Cancellation and Trip Interruption benefits.

56. If insureds, such as Plaintiffs or class members, call by telephone to inquire why their claims for Trip Cancellation or Trip Interruption benefits have been denied, Defendants ..., through use of and participation in the Enterprise, falsely represent by telephone that the Trip Cancellation or Trip Interruption benefits do not apply because a physician did not advise the insured to cancel or interrupt their trip.

57. And, if insureds, such as Plaintiffs or class members send letters in the U.S. mail inquiring why their claims for Trip Cancellation or Trip Interruption benefits have been denied, Defendants, through use of and participation in the Enterprise, falsely represent by mail that their Trip Cancellation or Trip Interruption benefits do not apply because a physician did not advise the insured to cancel or interrupt their trip.

58. With respect to the activities alleged herein, each Defendant and others not named as Defendants in this Complaint, in committing those activities, within the meaning of 18 U.S.C. § 2, seek to aid and abet and are aiding and abetting a scheme to violate 18 U.S.C. § 1962(a) and (c). Each Defendant also agreed to the operation of the scheme or artifice to deprive Plaintiffs and the class members of property interests. In furtherance of these agreements, each Defendant also agreed to interfere with, obstruct, delay or affect commerce by attempting to obtain and/or actually obtaining property interests to which Defendants are not entitled.

59. With respect to the overt acts and activities alleged herein, each Defendant

43

conspired with each other and with others not named as defendants in this Complaint, to violate 18 U.S.C. §1962(a) and (c), all in violation of 18 U.S.C. § 1962(d).  Each Defendant also agreed and conspired with each other to participate, directly or indirectly, in the fraudulent scheme or artifice alleged herein, to wrongfully retain money owed to Plaintiffs and the class.

60.   The numerous predicate acts of mail fraud and wire fraud described herein are part of separate and fraudulent extortionate schemes by Defendants designed to defraud Plaintiffs and the class of money and property interests under false pretenses. Plaintiffs and the class as victims of these unlawful patterns of illegal activity have and continue to suffer losses as a result of these activities.

61.   In carrying out the overt acts and fraudulent scheme described above the Defendants engaged in inter alia, violations of federal laws, including 18 U.S.C. §§ 1341 and 1343, 18 U.S.C. §§ 1341 and 1346, 18 U.S.C. §§ 1343 and 1346 and 18 U.S.C. § 1961 et seq.

62.   Section 1961(1) of RICO provides that 'racketeering activity' is any act indictable under any of the following provisions of Title 18, United States Code § 1341 (relating to mail fraud), and § 1343 (relating to wire fraud), 1346 (relating to scheme or artifice to defraud. [sic]

63.   For the purpose of executing and/or attempting to execute their scheme to defraud and to obtain money by reason of false pretenses, representations or promises, the Defendants, in violation of 18 U.S.C. § 1341, placed in post offices and/or in authorized repositories for mail matter and things to be sent or delivered by the Postal Service and received matters and things there from including but not limited to agreements, correspondence, payments, reports, data, summaries, statements, faxes, and others.

64.   For the purposes of executing and/or

44

attempting to execute their scheme to defraud and to obtain money by means of false pretenses, representations or promises, the Defendants, in violation of 18 U.S.C. § 1343, transmitted and received by wire matter and things to be sent or delivered by the Postal Service and received matters and things there from including but not limited to agreements, correspondence, payments, reports, data, summaries, statements, faxes, and others.

65.   The Defendants intentionally and knowingly made these material misrepresentations and intentionally and knowingly suppressed material facts from Plaintiffs and the class, for the purpose of deceiving them and thereby obtaining financial gain.

66.   The Defendants either knew or recklessly disregarded that the misrepresentations and omissions described above were material. Plaintiffs and the class necessarily relied on the misrepresentations and omissions in (a) failing to submit valid claims for Trip Cancellation or Trip Interruption benefits; or (b) accepting Defendants' denial of coverage for their valid Trip Cancellation or Trip Interruption claims; or (c) incurring additional expenses, fees and costs in trying to recover the Trip Cancellation or Trip Interruption benefits to which they were and are entitled.

67.   The Plaintiffs and the class members have been injured in their property rights by Defendants' overt acts and racketeering activities.

68.   The members of this 'Internet Trip Insurance Enterprise' shared the common goals of selling 'Trip Cancellation' and 'Trip Interruption' insurance coverage via internet solicitations.   The members of this 'Internet Trip Insurance Enterprise' also shared the common goal of using misrepresentations of fact, communicated by U.S. mail, telephone, and/or the Internet, to (1) dissuade insureds from even filing claims for Trip Cancellation or Trip Interruption benefits, and (2) to deny coverage for claims for Trip

Cancellation and Trip Interruption benefits on a ground not contained in the insurance certificate sold to the insured.  The members of the 'Internet Trip Insurance Enterprise' further shared the common goal of sharing and retaining profits made from denial of legitimate claims for Trip Cancellation and Trip Interruption insurance benefits.

69.   BCS INSURANCE COMPANY conducted or participated, directly or indirectly, in the conduct of the enterprise's scheme by underwriting the travel insurance policies.

70.   WORLD ACCESS SERVICE CORPORATION conducted or participated, directly or indirectly, in the conduct of the enterprise's scheme by (1) retaining, training and compensating the claims personnel who handled claims made under these policies, (2) denying coverage for Trip Cancellation and Trip Interruption benefits, and (3) communicating with insureds who made claims under these policies.

71.   ACCESS AMERICA facilitated this scheme by providing the internet web site on which prospective insureds could (1) review insurance certificates, (2) purchase travel insurance, electronically file claims, (2) review, obtain, and download Trip Cancellation and Interruption Claim Forms (Medical Reasons), and review, obtain and download Physician Statement Forms.

Rule 9(b), Federal Rules of Civil Procedure, requires that "[i]n all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity."

The Ninth Circuit applies the particularity requirements of Rule 9(b) to RICO fraud claims, including mail fraud and wire fraud.  *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir.1989); *Flores v. Emerich & Fike*, 416 F.Supp.2d 885, 911 (E.D.Cal.2006).  "Rule 9(b) requires that the pleader state the

46

1 'time, place, and specific content of the false representations,

2 as well as the identities of the parties to the

3 misrepresentations.'" *Flores, id.*

4      Defendants argue that the allegations in the Amended

5 Complaint fail to plead the specific time period with

6 particularity.  Defendants contend that the Amended Complaint

7 fails to allege any time period detailing when the alleged fraud

8 actually occurred, leaving Defendants to speculate what time

9 periods Plaintiffs are referring to and on what occasions

10 Defendants allegedly violated the mail and wire fraud statutes.

11 In addition, Defendants argue that the Amended Complaint does not

12 allege the place where the allegedly fraudulent

13 misrepresentations occurred.  Defendants further argue that Rule

14 9(b) is not satisfied because the Amended Complaint fails to

15 plead the specific content of the alleged misrepresentations:

16            Specifically, the Amended Complaint alleges
that if Plaintiffs were to telephone or send

17 a letter to Defendants to inquire why their
claim for travel insurance coverage was

18 denied, Defendants would state that 'benefits
do not apply because a physician did not

19 advise the insured to cancel or interrupt
their trip.'  (Amended Complaint, ¶¶ 56, 57.)

20 It is only by way of example do Plaintiffs
explain a single instance of a telephone call

21 or letter from a representative of a
Defendant.  (Amended Complaint, ¶

22 28(L)[sic].)  However, the specific content
and the materiality of the alleged fraudulent

23 statements is never explained or defined, nor
is the specific Defendant identified.

24 Plaintiffs make nothing more that conclusory
statements, without the necessary factual

25 specificity, as to the actual basis, if any,
for Plaintiffs' mail and wire fraud claims.

26

1    Plaintiffs respond that the Amended Complaint alleges that

2    every insured was given the same Claim Form and Physician

3    Statement Form via the Internet and that these allegations should

4    satisfy Defendants' time and place objections to the specificity

5    of the allegations.  In addition, the express false

6    representations in those forms is alleged, thereby satisfying

7    Rule 9(b)'s requirement that the specific content of the

8    misrepresentation be pleaded.

9         Defendants' motion to dismiss on this ground is DENIED.

10        6.    <u>FAILURE TO STATE CLAIM FOR CONSPIRACY IN VIOLATION</u>

11   <u>OF 18 U.S.C. § 1962(d)</u>.

12        Paragraph 59 of the Amended Complaint alleges that

13   Defendants conspired to violate Sections 1962(a) and (c), all in

14   violation of Section 1962(d).

15        Asserting that the Amended Complaint does not state a claim

16   upon which relief can be granted under either Sections 1962(a) or

17   1962(c), Defendants move for dismissal of the claim for violation

18   of Section 1962(d).

19        Section 1962(d) provides that "it shall be unlawful for any

20   person to conspire to violate any of the provisions of subsection

21   (a), (b) or (c) of this section."  There can be no RICO

22   conspiracy without having committed a RICO violation.  *Flores v.*

23   *Emerich & Fike*, 416 F.Supp.2d 885, 912 (E.D.Cal.2006).  Because

24   the motion to dismiss the RICO claims under Sections 1962(a) and

25   (c) is denied, dismissal of the Section 1962(d) claim also is

26   DENIED.

48

1    **E.   FAILURE TO ADEQUATELY PLEAD CLAIM FOR UNFAIR BUSINESS**

2  **PRACTICES UNDER CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 *ET***

3  ***SEQ.***

4    Defendants move to dismiss the Fourth Cause of Action

5  alleging unfair business practices in violation of California

6  Business and Professions Code §§ 17200 *et seq.*

7    California Business and Professions Code §§ 17200 *et seq.*,

8  known as the "Unfair Competition Law" or "UCL" "prohibits the

9  following five different types of wrongful conduct: (1) an

10  'unlawful' ... business act or practice' (2) an 'unfair ..

11  business act or practice;' (3) a 'fraudulent business act or

12  practice;' (4) 'unfair, deceptive, or untrue or misleading

13  advertising;' and (5) 'any act prohibited by [Bus. & Prof. Code

14  §§ 17500-17577.5].'  Cal. Bus. & Prof. Code § 17200." *National*

15  *Rural Telecommunications Co-op v. DirecTV, Inc.,* 319 F.Supp.2d

16  1059, 1073 (C.D.Cal.2003).

17    Defendants contend that it is apparent from the Amended

18  Complaint that Plaintiffs rely on the inclusion of the "physician

19  must advise" language in the claim form and when their claim was

20  denied as the "predicate acts" for the Fourth Cause of Action.

21  Defendants reiterate their arguments set forth above that

22  Plaintiffs were not mislead by the alleged conduct at issue

23  because they filed their claim without obtaining a Physician

24  Statement Form.  Defendants assert:

25       As charged by the law, Plaintiffs knew the
         requirements of their travel insurance
26       contract and filed their claim in complete

1     **disregard of the language that they know cite**
   **as the basis for their Section 17200 claim.**
2     **Therefore, with a valid ground for denial**
   **preventing the payment of their claim**
3     **regardless of the raising of the inapplicable**
   **provision, Plaintiffs have no predicate act**
4     **upon which to base their unfair competition**
   **action.**

5

  **Defendants cite *Carma Developers (Cal.), Inc. v. Marathon***
6
***Development California, Inc.,* 2 Cal.4th 342 (1992).**
7
  ***Carma Developers* involved the implied covenant of good faith**
8
**and fair dealing.[2] The California Supreme Court held:**
9
10     **We are aware of no reported case in which a**
   **court has held the covenant of good faith may**
11     **be read to prohibit a party from doing that**
   **which is expressly permitted by an agreement.**
12     **On the contrary, as a general matter, implied**
   **terms should never be read to vary express**
13     **terms ... 'The general rule [regarding the**
   **covenant of good faith] is plainly subject to**
14     **the exception that the parties may, be**
   **express provisions of the contract, grant the**
15     **right to engage in the very acts and conduct**
   **which would otherwise have been forbidden by**
16     **an implied covenant of good faith and fair**
   **dealing ... This is in accord with the**
17     **general principal that, in interpreting a**
   **contract "an implication should not be made**
18     **when the contrary is indicated in clear and**
   **express words." ... As to acts and conduct**
19     **authorized by the express provisions of the**
   **contract, no covenant of good faith and fair**
20     **dealing can be implied which forbids such**
   **acts and conduct.  And if the defendants were**
21     **given the right to do what they did by the**
   **express provisions of the contract there can**
22     **be no breach.' ....**

**2 Cal.4th at 374.**
23

24
   ————————————————————
25    [2]**The Third Cause of Action in the Amended Complaint alleges**
**violations of the implied covenant of good faith and fair dealing.**
26  **Defendants have not moved for dismissal of the Third Cause of**
**Action.**

1    Relying on this discussion, Defendants argue that assertion

2    of valid exclusions under the Policy cannot give rise to

3    liability for nonpayment under either a fraud or UCL claim for

4    relief and that a class action "could never be maintained because

5    of the need for insured-by-insured review of each claim."

6    Defendants reiterate that "Plaintiffs' continued failure to

7    allege that their claim would have been paid but for the

8    erroneous language renders their claim subject to dismissal for

9    its failure to comply with the requirements of Section 17200, as

10   amended at the behest of the People of the State of California."

11   For the reasons discussed above, it is fraudulent for an

12   insurer to impose a condition of exclusion to insurance coverage

13   based on a requirement not contained in a contract of insurance

14   for trip interruption benefits.  Defendants' motion to dismiss on

15   this ground is DENIED.

16                              CONCLUSION

17   For the reasons stated above:

18   1.   Defendants' motion to dismiss is denied in part and

19   granted in part with leave to amend.

20   2.   Counsel for Defendants shall prepare and lodge a form of

21   order setting forth the ruling in this Memorandum Decision within

22   five (5) court days following the date of service of this

23   decision.

24   3.   Plaintiffs shall file a Second Amended Complaint within

25   20 days of service of the Order.

26   ///

IT IS SO ORDERED.

**Dated:   January 14, 2008**                 _/s/ Oliver W. Wanger_
                                        UNITED STATES DISTRICT JUDGE